UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALLEN R. COBB,
                                        **DECISION AND ORDER**
            Petitioner,                 **No. 09-cv-0491MAT**

      -vs-

DAVID UNGER,


            Respondent.

_____

## I.   Introduction

*Pro se* Petitioner Allen R. Cobb ("Petitioner") has filed a
timely petition for a writ of habeas corpus under 28 U.S.C. § 2254
challenging the constitutionality of his custody pursuant to a
judgment entered May 30, 2006, in New York State, County Court,
Erie County, convicting him, upon a plea of guilty, of one count
each of Sexual Abuse in the First Degree (N.Y. Penal Law ("Penal
Law") § 130.50[4]) and Sexual Abuse in the Second Degree (Penal Law
§ 130.45[1]).

## II.  **Factual Background and Procedural History**

On February 17, 2006, Petitioner pleaded guilty under Superior
Court Information No. 26255 in Erie County Court to one each of
Sexual Abuse in the First Degree (N.Y. Penal Law ("Penal Law")
§ 130.50[4]) and Sexual Abuse in the Second Degree (Penal Law
§ 130.45[1]).  Plea Mins. [P.M.] 2.  He was subsequently sentenced,
in accordance with his plea agreement, to a determinate term of ten
years for the former count, followed by five years of post-release

supervision, and an indeterminate term of two and one-third to seven years for the latter count. The terms were set to run concurrently. Sentencing Mins. [S.M.] 13-14.

On December 1, 2006, Petitioner filed a petition with the Appellate Division, Fourth Department ("Fourth Department") seeking permission to file a late notice of appeal. See Pet'r Coram Nobis Motion at Resp't Ex. C at Ex. A1-B1. On December 19, 2006, the Fourth Department granted Petitioner's request and a notice of appeal was filed in January 2007. See Pet'r Coram Nobis Motion at Resp't Ex. C at Ex. B6-B7; Notice of Appeal at Resp't Ex. B. Subsequently, Petitioner applied to proceed *pro se* on direct appeal, and his request was granted on March 26, 2007. See Pet'r Application to Proceed as a Poor Person and Decision of the Fourth Department dated 03/26/07 at Resp't Ex. B. On May 5, 2008, the Fourth Department dismissed the appeal because Petitioner failed to timely perfect his appeal. See Decision of the Fourth Department dated 05/05/08 at Resp't Ex. B. Petitioner did not thereafter seek leave to appeal to the New York Court of Appeals.

On or about May 4, 2009, Petitioner filed a motion for a writ of error coram nobis in the Fourth Department, arguing that he was deprived of his right to effective assistance of counsel on direct appeal. See Pet'r Coram Nobis Motion at Resp't Ex. C. Petitioner's motion was denied by the Fourth Department on June 26, 2009, and leave was denied on November 4, 2009. See Decision of

the Fourth Department of 06/26/09 at Resp't Ex. C; Pet'r Request for Extension of Time to Perfect and File Brief, Attachment (Dkt. No. 7).

The instant habeas petition[1] followed, wherein Petitioner seeks relief on the following grounds: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) a Brady violation; (4) that his guilty plea was involuntary because it was coerced; (5) that his sentence was harsh and excessive; (6) "[d]isparity in [his] [s]entence"; (7) that his statements to police were illegally obtained; (8) that his guilty plea violated the double jeopardy clause; and (9) that he was denied his right to appeal. See Pet., Grounds One-Nine (Dkt. No. 1); Amendment to Pet., ¶ 22(a), (c) (Dkt. No. 11); Supporting Memorandum (Dkt. No. 17). Respondent filed a Response (Dkt. No. 32) and a supporting memorandum (Dkt. No. 33) in opposition to the petition, and Petitioner filed a Reply (Dkt. No. 36) thereto on April 6, 2010.

For the reasons that follow, habeas relief is denied and the petition is dismissed.

---

[1]

On September 28, 2010, Petitioner filed an "Amendment" to the habeas petition. Dkt. No. 11. Although Petitioner stylized and labeled this document as such, it did not seek to add new claims to the petition. Dkt. No. 11. Rather, it contained procedural information about Petitioner's case that already been reported in his petition, and supplemented two of the grounds raised in the petition. Dkt. No. 11 at ¶¶ 22, 23. Accordingly, despite Petitioner's reference to this document as an "amendment" to the petition, the Court construes it as a supplement to the original habeas petition.

**III. Motion to Compel Discovery**

Subsequent to the filing of the habeas petition, Petitioner moved to compel discovery of certain items from the Erie County District Attorney's Office and the Buffalo Police Department, including copies of photographs of the victims allegedly taken by Petitioner, copies of any statements made by the victims, copies of investigative reports and "all papers collected by any [police] [o]fficer in the course of the conducting of the [i]nvestigation," copies of any "any other statements collected by the Erie County District Attorney's Office, or any agency acting on their behalf in connection with this prosecution," and transcripts of 911 calls. See Pet'r Motion to Compel Discovery (Dkt. Nos. 27, 28). Petitioner submits that discovery of these items would support grounds one through four and six of the habeas petition. Id. at p 1-2. On May 17, 2012, Respondent filed a Response to Petitioner's Motion, and Petitioner thereafter filed a Rebuttal on May 31, 2012. Dkt. Nos. 39, 40.

A habeas corpus petitioner is not entitled to discovery as a matter of course. See Drake v. Portuondo, 321 F.3d 338, 346 (2d Cir. 2003)(citing Bracy v. Gramley, 520 U.S. 899, 904, 117 S. Ct. 1793, 1797, 138 L. Ed. 2d 97 (1997). However, under Rule 6 of the Rules Governing 28 U.S.C. § 2254 cases, a federal judge may permit discovery for "good cause" shown. Id. In order to show good cause, a petitioner must "set forth specific allegations that

provide reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief[]." Defino v. Thomas, 2003 U.S. Dist. LEXIS 24, No. 02 Civ. 7413, 2003 WL 40502, at *4 (S.D.N.Y. Jan. 2, 2003)(quoting Gonzalez v. Bennett, 2001 U.S. Dist. LEXIS 19798, at *11 (S.D.N.Y. Nov. 30, 2001))(internal quotation marks omitted).

Based on a review of the submissions made by the parties, the Court finds that Petitioner has failed to make specific allegations showing that he might be entitled to habeas corpus relief if the facts were developed more fully through discovery. Accordingly, Petitioner's motion to compel discovery (Dkt. Nos. 27, 28) is denied.

## IV. The Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984). In addition, the state may waive the

exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3); <u>see</u> <u>also</u> <u>Ramos v. Keane</u>, No. 98 CIV. 1604, 2000 U.S. Dist LEXIS 101, at *10 (S.D.N.Y. 2000) (state's failure to raise exhaustion requirement does not waive the issue).

Here, Respondent raises exhaustion as an affirmative defense to two of Petitioner's claims (grounds seven and eight of the petition), but does not address exhaustion with respect to the others. <u>See</u> Resp't Mem. of Law, Point Five at p 10-11. The Court finds that all of Petitioner's claim, with the exception of his ineffective assistance of appellate counsel claim, were not properly raised in the state courts and are therefore unexhausted for purposes of federal habeas review.

In this case, Petitioner filed a direct appeal in the Fourth Department; however, he failed to timely perfect it and the appeal was therefore dismissed. <u>See</u> Decision of the Fourth Department of 05/05/08 at Resp't Ex. B. Petitioner did not thereafter seek leave to appeal to the New York Court of Appeals. As the Court reads his pleadings, Petitioner does not appear to dispute that he failed to raise his habeas claims (with the exception of his ineffective assistance of appellate counsel claim) in the state courts via direct appeal and/or a post-conviction motion(s) pursuant to N.Y.

Crim. Proc. Law § 440.  However, he appears to argue that some of the instant claims are exhausted because they were raised in his coram nobis application in support of his ineffective assistance of appellate counsel claim.  <u>See</u> Pet. at ¶ 23; <u>see also</u> Pet'r Supporting Mem. (Dkt. No. 17) at p 5-7.[2]  This contention fails.

Under New York law, a writ of error coram nobis is available "only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel," and other constitutional errors may only be advanced in coram nobis applications to the extent that they are "predicates for the claim of ineffectiveness, on the theory that effective counsel would have appealed on those grounds."  <u>Turner v. Artuz</u>, 262 F.3d 118, 123 (2d Cir. 2001) (internal quotation marks omitted).  In other words, no claim besides ineffective assistance of appellate counsel can be exhausted through an application for a writ of error coram nobis.  Thus, Petitioner has exhausted his

---

[2]
The Court is unable to discern the precise legal nature/nuances of Petitioner's argument, as he has set forth confusing, and, in some respects, conflicting arguments with respect to the issue of exhaustion throughout his pleadings.  In his habeas petition, he states that grounds one through four of the habeas petition "were addressed in defendant's state writ of error coram nobis."  Pet. at ¶ 23. The Court liberally construes this statement as an attempt to demonstrate exhaustion.  However, in his supporting memorandum, he explains that grounds one, a part of ground two, and a part of ground three "are previously unraised, being the result of recently discovered [j]urisdictional errors contained in the Superior Court Information to which Petitioner pled." Supporting Mem. (Dkt. No. 17) at p 6.  Petitioner then goes on to explain that for the aforementioned claims/parts of claims that were "previously unraised," they were already "thoroughly presented to the New York Courts, so these arguments could be considered expansions of the previous argument, and as such are thus exhausted . . . ." <u>Id.</u> Because Petitioner is proceeding *pro se*, the Court reads his pleadings liberally and construes the ambiguities in his exhaustion arguments in his favor.

ineffective assistance of appellate counsel claim by virtue of his coram nobis application, the denial of which he appealed to the state's highest court. See 28 U.S.C. § 2254(b). However, none of the underlying claims in the habeas petition were exhausted by this procedure, and thus they remain unexhausted for purposes of federal habeas review.

Petitioner's failure to exhaust these claims, however, is not fatal to the Court's disposition of his application on the merits. Because the Court finds his unexhausted claims to be wholly meritless, it has the discretion to dismiss the petition notwithstanding Petitioner's failure to exhaust. See 28 U.S.C. § 2254(b)(2); Pratt v. Greiner, 306 F.3d 1190, 1197 (2d Cir. 2002). The Court now turns to the merits of Petitioner's claims.

## V.    The AEDPA Standard of Review

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

**VI. Analysis of the Petition**

**1. Petitioner's Ineffective Assistance of Counsel Claims (Ground One of the Petition) are Meritless**

At ground one of the petition and paragraph 22(a) of the amendment to the petition (Dkt. No. 11), Petitioner argues that he received ineffective assistance of trial counsel because counsel: (1) failed to file pre-trial motions; (2) failed to request <u>Brady</u> material; (c) "misrepresented the law and consequences to [Petitioner], thereby coercing [Petitioner] to plead guilty"; (3) "failed to negotiate [a] 'plea bargain' causing [Petitioner] to plead guilty to Top Counts on 'People's Information'; and (4) failed to properly investigate his case, such that counsel was unable to recognize that the charging instrument was "jurisdictionally defective." Pet., ¶ 22A; Amendment to Pet., ¶ 22(a). As discussed below, these claims are meritless and do not warrant habeas relief.

Under well-established Supreme Court authority, in order to prevail on an ineffective assistance of counsel claim a petitioner must show both that 1) his or her counsel's performance was deficient, in that it failed to conform to an objective, reasonableness threshold minimum level, and 2) that deficiency caused actual prejudice to the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984); <u>Greiner v. Wells</u>, 417 F.3d 305, 319 (2d

Cir. 2005), cert. denied, 546 U.S. 1184 (2006). To be constitutionally deficient, the attorney's conduct must fall "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; Greiner, 417 F.3d at 319. An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort being made to "eliminate the distorting effects of hindsight [.]" Strickland, 466 U.S. at 689; Greiner, 417 F.3d at 319.

Courts generally presume under Strickland that constitutionally adequate assistance has been rendered, and significant decisions have been made through the exercise of sound professional judgment to which "a heavy measure of deference" is afforded. Strickland, 466 U.S. at 691; Greiner, 417 F.3d at 319. Prejudice is established by showing that there is a "reasonable probability" that but for counsel's deficiencies "the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Henry v. Poole, 409 F.3d 48, 63-64 (2d Cir. 2005). In the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the petitioner would not have pleaded guilty and instead would have exercised his or her right to a trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985);

United States v. Coffin, 76 F.3d 494, 498 (2d Cir.), cert. denied, 517 U.S. 1147 (1996).

"[A] guilty plea[,] [however][,] represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). Thus, a habeas petitioner's unconditional guilty plea waives all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of his plea. Id. at 267; accord, e.g., Coffin, 76 F.3d at 497-98.

**(A) Petitioner's Ineffective Assistance of Counsel Claims Unrelated to the Guilty Plea are Precluded from Habeas Review**

Petitioner claims that he received ineffective assistance of trial counsel because counsel: failed to file pre-trial motions; failed to request Brady material; and failed to properly investigate Petitioner's case, such that counsel failed to recognize that the charging instrument was "jurisdictionally defective." See Pet., ¶22 A; Amendment to Pet., ¶ 22(a). These claims, which involve counsel's pre-plea actions and do not affect the voluntariness of the plea itself, were waived by Petitioner's

voluntary, knowing and intelligent guilty plea (see discussion
infra at Section VI, 4). See Tollett, 411 U.S. at 267; see e.g.,
Burwell v. Perez, 10 Civ. 2560 (CM) (FM), 2012 U.S. Dist. LEXIS
65773 (S.D.N.Y. May 7, 2012) ("Because [Burwell's] guilty plea was
voluntary and intelligent, Burwell's ineffective assistance claim,
which concerns only his counsel's pre-plea actions (or failures to
act), fails to state a violation of his constitutional rights that
this Court can consider.") (citations omitted); Sullivan v. Goord,
No. 05-CV-6060(DGL)(VEB), 2007 U.S. Dist. LEXIS 98564, *11
(W.D.N.Y. Aug. 14, 2007) (Petitioner's "claims of ineffectiveness
ascribed to [his first] attorney . . . are barred under Tollett v.
Henderson because the substance of those claims do not relate to
the voluntariness of [petitioner's] plea or the advice he received
with regard to pleading guilty."), report and recommendation
adopted by 2007 U.S. Dist. LEXIS 69444 (W.D.N.Y. Sept. 19, 2007).
Accordingly, Petitioner's claims that he received ineffective
assistance of counsel because counsel: failed to file pre-trial
motions; failed to request Brady material; and failed to properly
investigate Petitioner's case, such that counsel failed to
recognize that the charging instrument was "jurisdictionally
defective" are barred from habeas review and are therefore denied.

### (B) Petitioner's Ineffective Assistance of Counsel Claims Related to the Guilty Plea are Meritless

With respect to Petitioner's remaining ineffective assistance
of counsel claims related to the advice Petitioner received from

counsel with respect to his guilty plea -- i.e., that counsel "misrepresented the law and consequences to [Petitioner], thereby coercing [Petitioner] to plead guilty," and that counsel "failed to negotiate [a] 'plea bargain' causing [Petitioner] to plead guilty to Top Counts on 'People's Information' -- are mertiless and do not warrant habeas relief.

In this case, the Court need not address the first prong of Strickland[3] because Petitioner has not and cannot demonstrate, that "there is a reasonable probability that, but for counsel's errors, [he] would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Notably, the gravamen of Petitioner's argument is simply that counsel, as an "experienced attorney," should have been able to secure a more favorable plea bargain for him -- namely, one that would have permitted him to plead to lesser charges and/or afforded him a lesser sentence than the ten years he received as part of the negotiated plea. See Pet'r Supporting Mem. at 26-27. Throughout his supporting memorandum, Petitioner expresses his personal dissatisfaction with his attorney, stating in a conclusory and generalized manner throughout that document that "the outcome would have been different but for the errors of counsel," that "[he] was prejudiced

---

3

See Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) ("'[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.'" (alterations in original) (quoting Strickland, 466 U.S. at 697)).

by [counsel's] actions, and that but for 'counsel's errors' there would have been a different outcome is quite obvious." <u>See</u> Pet'r Supporting Mem. at p 19, 30.  The prejudice resulting from counsel's alleged errors, however, is not obvious to this Court and none is discernible on the record.  To the contrary, the record reflects that his plea bargain was in full satisfaction of "numerous B violent felonies" that he could have been charged with in state court.  The record reflects further that, without the benefit of the plea bargain counsel negotiated on Petitioner's behalf, Petitioner faced the possibility of additional prosecution in state and federal court and a sentence of up to 25 years imprisonment (rather than the 10 he received under the plea agreement).  Accordingly, the Court cannot find that there is a "reasonable probability" that Petitioner would not have pleaded guilty and would have insisted on going to trial, but for counsel's alleged errors.  His claims are therefore denied.

In sum, Petitioner's ineffective assistance of counsel claims are meritless and do not warrant habeas relief and are therefore denied.

## 2.   Petitioner's Ineffective Assistance of Counsel Claim (Ground Two) and his Claim that he was Denied his Right to Appeal (Ground Nine) are Meritless

At ground two of the petition, Petitioner claims, as he did in his coram nobis application, that he received ineffective assistance of appellate because appellate counsel failed to:

(1) "raise any meritorious issues for appeal"; (2) "file appellate brief in timely fashion"; (3) "inform[] [Petitioner] he would file for an extension of time to perfect and file a brief and he did not, causing appeal to be dismissed on procedural grounds." Pet., ¶ 22B. At ground nine[4] of the petition, Petitioner asserts that he was deprived of his right to appeal on account of appellate counsel's "[n]egligence and lies." Pet. ¶ 22I. The Fourth Department adjudicated Petitioner's ineffective assistance of appellate counsel claims on the merits when it summarily denied his coram nobis application. See Sellan v. Kuhlman, 261 F.3d 303, 314 (2d Cir. 2001) (holding that state court's summary denial of petitioner's coram nobis application constituted an adjudication on the merits of petitioner's ineffective assistance of appellate counsel claim). Accordingly, the AEDPA standard of review applies, and, under that standard, the instant claims are meritless.

As discussed above, in order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his attorney's representation was unreasonable under the "prevailing professional norms," and that there is a reasonable probability that, but for his attorney's errors, "the result of the proceeding would have been different." Strickland v. Washington,

---

[4] This claim is not numbered in the habeas petition, but is listed at paragraph 22(I) of the petition, which is two subsections down from ground seven of the petition. Pet. ¶ 22(I). Accordingly, the Court refers to it as ground nine.

466 U.S. 668, 688 (1984). A claim of ineffective assistance of appellate counsel is evaluated upon the same standard as is a claim of ineffective assistance of trial counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)), cert. denied, 508 U.S. 912 (1993).

Petitioner's claims that he received ineffective assistance of counsel on direct appeal and that he was deprived of his right to appeal on account of "appellate counsel's negligence and lies," are meritless. The record reflects that on or about December 1, 2006, Petitioner filed a petition with the Fourth Department seeking permission to file a late notice of appeal. That request was granted, and, on or about January 2, 2007, Petitioner's trial attorney Herbert L. Greenman, Esq., filed a notice of appeal on Petitioner's behalf. See Attached Exhibits to Pet'r Coram Nobis Application at Resp't Ex. C. In a letter dated that same day from attorney Greenman to Petitioner enclosing a copy of the notice of appeal, attorney Greenman stated that he was "somewhat surprised as to [Petitioner's] position with respect to the filing of the appeal." Id. at Ex. C4. Attorney Greenman went on to express his concerns with the filing of the appeal explaining to Petitioner, among other things, that "your plea was based upon a promise by the Erie County District Attorney's Office not to take a specific act. To my knowledge they have kept the[ir] promise. However, by appealing the sentence which was an agreed upon sentence before

Judge Pietruszka, it is my fear that the District Attorney's Office will now take the position that you are breaching the original agreement." Id. Subsequently, on or about February 2, 2007, Petitioner filed an application in the Fourth Department, seeking to pursue his direct appeal *pro se*. Id. at D1. In a letter dated February 16, 2007, the Fourth Department admonished Petitioner with respect to the potential hazards and pit-falls of self-representation, explicitly alerting Petitioner that "an attorney's knowledge of appellate practice could protect your appeal from being improperly perfected or even dismissed on procedural grounds." Id. at D4. Despite the Fourth Department's admonishment, Petitioner elected to proceed *pro se*, and the Fourth Department subsequently granted his application to do so. Id. at D5, E1-E2. Over one year passed, and Petitioner did not perfect his direct appeal or seek an extension to perfect his appeal. Accordingly, the People moved to dismiss the appeal on timeliness grounds, and the Appellate Division granted the People's motion and dismissed the appeal. Id. at People's Opposing Aff. of 05/19/09 and Decision of the Fourth Department dated 06/26/09.

Despite the above discussion which clearly shows that Petitioner chose to proceed on direct appeal *pro se* -- even after having been admonished by the Fourth Department as to the dangers of doing so -- and that the appeal was dismissed as a result of his own failure to comply with applicable timing requirements, he

maintains that he is entitled to habeas relief on the basis that he was not afforded effective assistance on direct appeal. He asserts that he was ill-advised by a fellow inmate to proceed *pro se* on direct appeal, and that had his appeal been timely perfected, he could have obtained a reduction in his sentence, which, according to him, was harsh and excessive. He maintains that the sentence he received was severe, given the circumstances of his case, and that "many defendants who committed more heinous and/or repeated offenses had received lesser punishments than [him]." See Pet'r Supporting Memo. at 54-55.

These claim fail insofar as Petitioner cannot demonstrate that the sentencing issue he sought to pursue on direct appeal is meritorious. As discussed *infra*, Petitioner's sentencing claims are meritless. Thus, the Court cannot find that there is a "reasonable probability" -- or any possibility for that matter -- that had Petitioner properly filed an appeal challenging his sentence, the outcome of said appeal would have been favorable to him.

Accordingly, Petitioner's claims that he was deprived of the effective assistance of appellate counsel and his right to a direct appeal as the result of appellate counsel's "negligence and lies" are meritless and do not warrant habeas relief. To the extent the claims were adjudicated on the merits by the Fourth Department, the

state court's determination was not contrary to, or an unreasonable application of clearly established Supreme Court law.

### 3. Petitioner's <u>Brady</u> Claim (Ground Three) and his Claim that the Police Illegally Obtained Statements from him (Ground Seven) are Meritless

At ground three[5] of the petition, Petitioner claims that the prosecution withheld <u>Brady</u> material from the defense. Petitioner contends that the "prosecution was[,] to the best of [Petitioner's] knowledge[,] in possession of exculpatory evidence showing lies and misdeeds on the part of their witnesses." Pet., ¶ 22C. At ground seven of the petition, Petitioner claims that the police illegally obtained statements from him. He contends that "[w]hen interviewed by Buffalo police in the . . . [s]tation[,] the interviewers failed to video or audiotape [his] statement/confession, when those devices were available and common procedure, but instead took notes." Pet. ¶ 22G. These claims does not warrant habeas relief.

As discussed *supra*, the Supreme Court has held that when a criminal defendant on advice of counsel has solemnly admitted in open court that he is guilty of a charged offense, he may not thereafter raise independent claims relating to deprivation of constitutional rights that occurred prior to the plea. <u>Tollett</u>,

---

[5] This claim is not numbered in the habeas petition, but is listed at paragraph 22(c) of the petition, which immediately follows ground two of the petition. Pet. ¶ 22(c). Accordingly, the Court refers to it as ground three.

411 U.S. at 267. He may only attack the voluntary and intelligent character of the plea. Id. "In other words, under Tollett, the only issue reviewable by a federal court on a habeas petition is whether the guilty plea in state court was knowing, intelligent, and voluntary." Siao-Pao v. Keane, 878 F. Supp.2d 468, 472 (S.D.N.Y. 1995). Here, Petitioner's claims involve matters that preceded entry of Petitioner's guilty plea and are unrelated to the voluntary nature thereof. Accordingly, the instant claims were waived by Petitioner's knowing, voluntary and intelligent guilty plea (see discussion *infra* at Section VI, 4), and are therefore denied on this basis.

### 4. Petitioner's Claims that his Guilty Plea was Involuntary (Grounds Four and Eight) are Meritless

At grounds four and eight[6] of the petition and paragraph 22(c) of the amendment to the petition, Petitioner claims that his guilty plea was involuntary because: (1) it was obtained through "prosecutorial coercion" insofar as the prosecutor "threatened" to turn his case over to federal authorities for an additional federal prosecution if he did not accept the guilty plea; (2) the prosecution "overcharg[ed]" and "later fail[ed] to reduce [the] charges when information was available indicating Petitioner had actually committed a statutorily lesser offense that one pled to";

---

[6] This claim is not numbered in the habeas petition, but is listed at paragraph 22(H) of the petition, which immediately follows ground seven of the petition. Pet. ¶ 22(G). Accordingly, the Court refers to it as ground eight.

and (3) his plea was obtained by violation of his protection against double jeopardy. See Pet. ¶ 22D, H; Amendment to Pet. ¶ 22(c). These claims are meritless and do not warrant habeas relief.

Due process requires that a guilty plea be voluntary, as well as knowing and intelligent. See, e.g., Bousley v. United States, 523 U.S. 614, 618 (1998); Brady v. United States, 397 U.S. 742, 748 (1970). "The standard for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" Urena v. People of the State of New York, 160 F. Supp. 2d 606, 610 (S.D.N.Y. 2001) (quoting Ventura v. Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992)). A plea is involuntary where the defendant did not have "'knowledge of the nature of the constitutional protections he will forgo by entering his plea.'" Marcelin v. Garvin, 97 Civ. 2996, 1999 U.S. Dist. LEXIS 16888, 1999 WL 977221 at *5 (S.D.N.Y. Oct. 26, 1999) (Peck, M.J.) (quoting Matusiak v. Kelly, 786 F.2d 536, 543 (2d Cir.), cert. denied, 479 U.S. 805 (1986)). "A plea is 'intelligent' and 'voluntary' when a defendant had the advice of counsel, understood the consequences of his plea and the plea was not physically or mentally coerced." Heron v. People, 98 Civ. 7941, 1999 U.S. Dist. LEXIS 18907, 1999 WL 1125059 at *5 (S.D.N.Y. Dec. 8, 1999); see e.g., United States v. Doe, 537 F.3d 204, 211 (2d Cir. 2008) ("[T]he Supreme Court has

instructed that, with regard to voluntariness, a guilty plea 'must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'"); <u>Miller v. Angliker</u>, 848 F.2d 1312, 1320 (2d Cir.) ("[A] plea is deemed 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way; it is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally."), <u>cert. denied</u>, 488 U.S. 890 (1988).  Moreover, "[a]s the Supreme Court has noted, statements made at plea allocutions carry a strong presumption of verity and constitute a formidable barrier in any subsequent collateral proceeding." <u>Marcelin v. Garvin</u>, 1999 U.S. Dist. LEXIS 16888, 1999 WL 977221 at *7 (quotations omitted, quoting, inter alia, <u>Blackledge v. Allison</u>, 431 U.S. 63, 74 (1977)); <u>accord, e.g.,</u> <u>United States v. Grzybek</u>, 283 F. App'x 843, 845 (2d Cir. 2008) ("It is well established that '[a] criminal defendant's self-inculpatory statements made under oath at this plea allocution carry a strong presumption of verity . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them.'").

Here, Petitioner's statements at the plea hearing refute his current claims of coercion and involuntariness, and the Court finds no basis to conclude that his plea was anything other than knowing, voluntary and intelligent.  The record reflects that the guilty plea was "in full satisfaction of potential numerous B violent felonies" that Petitioner could have been charged with in state court.  P.M. 2.  The record further reflects that the bargained-for plea negotiated by counsel on Petitioner's behalf was pursuant to People v. Farrar, 52 N.Y. 2d 302 (1981).[7]  P.M. 12, 15.  In exchange for Petitioner's guilty plea to criminal sexual act in the first and second degrees and Petitioner's waiver of his right to appeal, the prosecution agreed not to prosecute Petitioner further in state court or turn evidence over to federal authorities.  Also as part of the negotiated plea bargain, the People agreed to sentence Petitioner to a determinate term of ten years imprisonment.  P.M. 2, 12-14.  During the plea allocution, Petitioner affirmed that he had time to speak with his attorney before deciding to plead guilty, and that he was satisfied with his attorney's services.  P.M. 7-8.  Petitioner acknowledged that he

---

[7]
  In a letter dated May 23, 2007 from Petitioner's attorney Herbert Greenman, which was attached as an exhibit to Petitioner's coram nobis application (see Resp't Ex. C), attorney Greenman explained that the Farrar "decision indicates that where the prosecution[']s consent to a guilty plea is conditioned on a negotiated sentence[,] . . . the Court is bound to impose such a sentence unless it determines, from its own sense of justice, that a less severe sentence should be imposed."  In that same letter, attorney Greenman also stated that, in the course of negotiating Petitioner's plea bargain, "[he] reviewed the evidence in the District Attorney's possession.  The prosecution agreed that it would not turn over to federal authorities the additional evidence which . . . [he] was concerned greatly."  See Pet'r Coram Nobis Motion at Resp't Ex. C at Ex. F-3.

understood the nature of the charges, the promised sentence, and the rights he was waiving by pleading guilty. P.M. 5, 9-15. Petitioner admitted, without hesitation, to each of the elements of the crimes of Criminal Sexual Act in the First and Second Degrees. P.M. 16-17. Petitioner also acknowledged that he read and understood English, that he was in good physical and mental health, and was not under the influence of drugs or alcohol. P.M. 6-7. Further, Petitioner responded in the negative when asked by the trial court judge, "[h]as anyone, and I include the Court, the district attorney, your lawyer, the police or anyone else, threatened you or coerced you or in any way influenced you against your own free will in order to get you to plead guilty here today?" P.M. 11. And, when asked by the trial court judge if he was entering his plea "voluntarily, of [his] own free will," Petitioner responded in the affirmative. P.M. 11. Immediately prior to entry of the guilty plea, the court confirmed once more that no other promises, except for those disclosed on the record, had been made to him. P.M. 15.

Despite the above colloquy, Petitioner maintains that the prosecution "created a [f]ederal prosecution threat in order to coerce his plea," and that it was unlawful for the prosecution to bargain in this manner given that his double jeopardy rights would have been violated if he had, in fact, been prosecuted in state and federal court for the same offenses. See Pet'r Supporting Mem. at

Ground Three (E). This claim fails. First, the claim is belied by the record to the extent the minutes from the plea proceeding show that Petitioner's attorney had engaged in "lengthy negotiations" with the prosecutor prior to Petitioner's entry of his guilty plea. P.M. 13. With respect to those negotiations, Petitioner's attorney specifically explained, on the record, that "the consideration with respect to this plea is that the People would not charge [Petitioner] with any other further conduct relative to the incidents about which he is taking a plea and, frankly, about which he had previously given a statement. Additionally, the People will take no act to see that he is prosecuted for any other matter, either in this jurisdiction or any other jurisdiction." P.M. 13. Moreover, there is no merit to Petitioner's claim that the plea bargain was involuntary because it was obtained in violation of his double jeopardy rights. Indeed, the Double Jeopardy Clause provides that no "person shall be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V, cl. 2. Nevertheless, "a defendant in a criminal case may be prosecuted by different sovereigns for the same offense" under the doctrine of dual sovereignty. United States v. Nelson, 277 F.3d 164, 212 (2d Cir. 2002) (citing Heath v. Alabama, 474 U.S. 82, 88-89 (1985) (when "a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences'")); see also United States v.

<u>Lanza</u>, 260 U.S. 377, 382 (1922) ("Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other. It follows that an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each.").

Similarly, Petitioner's claim that his guilty plea was involuntary because the prosecution "overcharg[ed]" him for crimes that were more severe than those he actually committed and "later fail[ed] to reduce [the] charges when information was available indicating Petitioner had actually committed a statutorily lesser offense than one pled to" is meritless. Amendment to Pet. ¶ 22(c). This claim fails to the extent that Petitioner's guilty plea was "in full satisfaction of potential numerous B violent felonies that could [have] be[en] charged against him." P.M. 2. During his plea colloquy, he acknowledged that he wished to plead guilty to both counts of Superior Court Information No. 26255, charging him with Criminal Sexual Act in the First and Second Degrees. P.M. 8-9. Further, he admitted to each of the elements of Criminal Sexual Act in the First and Second Degrees. P.M. 16-17.

In sum, Petitioener's claims that his guilty plea was involuntary are meritless. To the contrary, Petitioner's guilty plea was knowing, voluntary and intelligent, and his claims related thereto are therefore denied in their entirety.

**5.   Petitioner's Sentencing Claims (Grounds Five and Six) are Meritless**

At ground five of the petition, Petitioner asserts that his sentence was harsh and excessive because the sentencing court failed to consider certain mitigating factors, including Petitioner's lack of a criminal record, the "psychological analysis of [him] showing that neither [Petitioner] nor society would benefit from his incarceration, and that he was an ideal candidate for treatment."   Pet. ¶ 22E.   At ground six of the petition, Petitioner claims that there was a disparity in his sentence, arguing that "[w]hen compared to persons with similar and even more severe crimes of the same nature in the same [c]ourt in the same time period, [he] received a sentence two (2) to ten (10) times more severe."   Pet. ¶ 22F.   These claims provide no basis for habeas relief.

To the extent Petitioner is arguing that, as a matter of state law, his sentence was harsh and excessive, that claim presents no federal constitutional issue and is therefore not cognizable by this Court.   In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States. 28 U.S.C. § 2254(a).   The Second Circuit has held that no federal constitutional issue amenable to habeas review is presented where, as here, the sentence is within the range prescribed by state law.   White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992);   Fielding v. LeFevre, 548 F.2d

1102, 1108 (2d Cir. 1977); Underwood v. Kelly, 692 F. Supp. 146 (E.D.N.Y. 1988), aff'd, 875 F.2d 857 (2d Cir.), cert. denied, 493 U.S. 837 (1989). In this case, Petitioner was convicted of Criminal Sexual Act in the First Degree (a Class B violent felony) and Criminal Sexual Act in the Second Degree (a Class D nonviolent felony), the former of which was punishable by a determinate prison term of from five to twenty-five years. See S.M. 2, 13; Penal Law §§ 70.02. Petitioner was sentenced to a determinate ten year prison term, in accordance with his plea agreement, which is well with the range prescribed by New York law. S.M. 13. Because Petitioner's sentence falls within the range established by state law, his claim does not present a federal constitutional issue cognizable on habeas review. Accord, e.g., Peppard v. Fischer, 739 F. Supp.2d 303, 309 (W.D.N.Y. 2010) (collecting cases).

To the extent Petitioner's pleadings can be construed as raising an Eighth Amendment claim, that claim is also meritless. The Supreme Court has articulated a principle of "gross disproportionality" for measuring whether a prisoner's sentence violates the Eighth Amendment proscription against "cruel and unusual punishment." E.g., Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983); Rummel v. Estelle, 445 U.S. 263 (1980). Only extreme sentences that are grossly disproportionate to the crimes for which they are imposed can be said to violate the Eighth Amendment. See id.; see also United

States v. Snype, 441 F.3d 119, 152 (2d Cir. 2006) (noting that successful challenges to the proportionality of particular sentences have been exceedingly rare). Applying the Supreme Court's precedent on this issue, the Court finds that this case does not present one of those rare and extreme circumstances in which the Supreme Court contemplated intervention by a reviewing court into a state's sentencing decision.

Accordingly, Petitioner's sentencing claims are meritless and provide no basis for habeas relief. Therefore, they are denied.

## VII. Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Petitioner's motion to compel discovery (Dkt. Nos. 27, 28) is also denied. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York,

within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     March 5, 2013
           Rochester, New York